DAVID BRYAN DESHLER, Appellant, v. THE STATE
OF NEVADA, Respondent.

No. 19863

April 24, 1990                    790 P.2d 1001

*Terri Steik Roeser,* State Public Defender, and *Janet S. Besse-mer,* Deputy State Public Defender, Carson City, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Brent T. Kolvet,* District Attorney, and *Daniel J. Greco,* Deputy District Attorney, Douglas County, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal from three felony convictions arising out of the theft of a woman's wallet containing money and appellant Deshler's subsequent abusive treatment of the police authorities during arrest, transportation and incarceration. Deshler was sentenced to serve concurrent four year terms for each conviction. For reasons hereinafter stated, we have concluded that Deshler

was fairly tried and convicted on each count with the exception of the conviction for intimidation of a public officer, which must be reversed.

## Facts

During the late evening and early morning hours of October 12th and 13th, 1988, Deshler was patronizing the Tahoe Tavern. A female customer left her seat at the bar to go to the ladies' restroom, momentarily leaving her purse unattended at the foot of her chair. When the woman returned, she picked up her purse and noticed that it felt lighter. While she was looking through the purse to determine what, if anything, was missing, a man she later identified as Deshler came over, put his hand into the purse and took out her address book. She immediately retrieved her address book from Deshler, continued her search of the purse's contents and realized her wallet was missing.

The woman told the bartender about her missing wallet. The bartender, with the help of some patrons, initiated an unsuccessful general search of the premises for the wallet. The address book incident caused the women to suspect Deshler when she was unable to locate the wallet. She became more suspicious when, a few minutes later, she noticed Deshler standing nearby, conspicuously holding a one hundred dollar bill (one of the bill denominations in the missing wallet).[1]

She informed the bartender and the owner of her suspicions and her basis for them. The bartender and owner did a pat down search of Deshler and discovered the missing wallet in the front of his sweatpants. The police were summoned and Deshler was physically prevented from leaving the premises by a patron and one of the owners.

When the police arrived, a bloody Deshler was on the ground outside the bar screaming obscenities and claiming that he was injured. The police, believing Deshler to be injured, summoned the paramedics to care for him. Deshler was placed under arrest while verbally abusing the deputies and fighting or attempting to fight with them, both during and after the arrest.

Concurrent with this scuffle or shortly thereafter, the paramedics arrived. Deshler violently resisted the paramedics' attempts to load him into the ambulance but was eventually placed in the vehicle with the assistance of Deputy Crawford, one of the arresting officers. Deputy Crawford accompanied Deshler in the ambulance during the ride to the hospital. The facts leading to

---

[1]Earlier in the evening, Deshler had approached one of the owners of the Tahoe Tavern about running a tab, explaining that he did not have any money. The owner refused because his partner did not allow running tabs but loaned Deshler $20.00 of his own money instead.

the intimidation charge and conviction arose from Deshler's threats against Crawford in the ambulance. Deshler repeatedly threatened Deputy Crawford in numerous and specific ways, including death threats to him and his family. The seriousness of the threats, their nature and tone were corroborated by the paramedic who was riding in the ambulance with Deshler and Deputy Crawford.

While making the threats, Deshler was also struggling to free himself from the gurney to which he had been fastened by several straps. He eventually managed to break free of the leg restraints and Deputy Crawford thereafter placed his knees on him for the remainder of the trip to keep him under control. Deshler was never able to free himself from the gurney.

Deshler's treatment at the hospital was brief and he was then booked into Douglas County Jail early on the morning of October 13 where he subsequently had another altercation, this time with the guards at the jail. This altercation occurred about ninety minutes after his booking when two deputies took Deshler to the phone area in the jail, where he was allowed to make phone calls. After making some phone calls, Deshler refused to return to his cell peacefully. The deputies asked him several times to return to his cell but a cursing Deshler refused, stating that the deputies were going to have to forcibly put him in his cell if that was where they wanted him. As he made this statement, he assumed an aggressive "karate type" fighting stance and started kicking and swinging at the deputies. The officers, concluding that further conversation was pointless, rushed Deshler, grabbed him, picked him up and carried him back to his cell while he struggled and kicked them. The trial and convictions followed.

## Discussion

In reviewing the legitimacy of the intimidation conviction, we are called upon to interpret NRS 199.300. We conclude that, under the facts of this case, and in light of the statutory language of NRS 199.300, the felony charge and conviction against Deshler were improper and cannot stand.

NRS 199.300 reads:

199.300. Intimidating public officer, juror or referee. Every person who directly or indirectly, addresses any threat or intimidation to a public officer or to a juror, referee, arbitrator, appraiser or assessor, or to any other person authorized by law to hear or determine any controversy or matter, with intent to induce him, contrary to his duty to do or make or to omit or delay any act, decision or determination, shall be punished:

1. Where physical force or the immediate threat of such force is used in the course of such intimidation or in the making of such threat, by imprisonment in the state prison for not less than 1 year nor more than 6 years and may be further punished by a fine of not more than $5,000.

2. Where no physical force or immediate threat of such force is used in the course of such intimidation or in the making of such threat, for a gross misdemeanor.

It is uncontested that Deshler was abusive and combative during his arrest and in the ambulance, where he threatened Crawford. However, the State's charge concerning felony intimidation was limited to the events occurring during the ride in the ambulance. Deputy Crawford was clearly a public officer against whom improper threats were made. Also, a jury could have properly concluded that Deshler's intent in making the threats was to induce Deputy Crawford to do, omit or delay some act with respect to Deshler that would be contrary to his duty.

The operative requirements for a felony conviction under subparagraph 1 are "physical force or the immediate threat of force." The record reflects that neither statutory requisite was present during Deputy Crawford's experience with Deshler in the ambulance. All of Deshler's threats, though severe and credible, were couched in future terms. Moreover, it does not appear from the record that physical force or any realistic immediate threat thereof was ever used against Deputy Crawford in the ambulance. Such force or threats are required for a felony conviction.

Even assuming that some of the threats made were immediate threats and the intent to do harm was immediate, Deshler lacked the present capacity or apparent ability to immediately carry out the threats, necessarily making them threats of future and not immediate harm. In addition to being handcuffed, Deshler was apparently securely strapped to the gurney in three or four separate places for the duration of the trip to the hospital. Although he succeeded in breaking free of the makeshift foot restraints, he was still sufficiently immobilized for Crawford to hold him down and control him without fear of physical harm from Deshler.

Had Deshler used or threatened immediate physical force while possessing the ability to carry out an immediate threat, there would have been a factual basis to support the charge of felony intimidation of a public officer. Because he lacked the apparent ability to carry out a credible, immediate threat, any crime committed by Deshler in the ambulance would have been limited to that of a gross misdemeanor as provided under subparagraph 2 of the statute.

The determination of whether the evidence is sufficient to sustain a conviction is a matter of law on appeal. State v. Wilson,

104 Nev. 405, 760 P.2d 129 (1988). We hold, as a matter of law, that felony intimidation could not have been committed under the circumstances of the instant case. When the evidence in the record contradicts or shows an absence of one of the elements of the crime, we will not hesitate to overturn the conviction. *Cf.* Canfield v. Gill, 101 Nev. 170, 171, 697 P.2d 476, 476-477 (1984). (While *Canfield* is a civil case, the policy rationale, constitutional concerns and other factors which support this principle in civil cases become even more compelling in the criminal context.)

Because we reverse the intimidating a public officer conviction for reasons previously discussed, we need not consider appellant's additional assignments of error with regard to that conviction. We have also considered all other assignments of error concerning the two remaining convictions and conclude that they are without merit. The counts involving possession of stolen property and battery by a prisoner were presented to the jury with a sufficient evidentiary basis for the jury to properly convict Deshler of these crimes.

For the reasons hereinbefore specified, we reverse Deshler's conviction for intimidating a public officer and affirm the convictions for both possession of stolen property and battery by a prisoner.

SPRINGER, J., concurring:

I concur with the majority in its reversal of the intimidation charge but on other grounds. I do not think that the statute under which Deshler was charged was intended to apply to cases of resisting arrest or battery by a prisoner. Deshler stands convicted of battery, and I think it is stretching things to say he can also be convicted of intimidating a public officer. The intimidation statute is obviously intended to apply to one who tries to influence legal decision-making by means of threats. The words "juror, referee, arbitrator, appraiser or assessor, or any other person authorized by law to hear or determine any controversy," clearly show the legislative intent to protect the decision-making process and not the type of unpremeditated threats of violence involved here. Deshler's conduct is punishable under a number of other statutes, and I think it is a mistake to allow NRS 199.300 to be the basis for additional charges against Deshler when the statute is clearly intended for another, more specific purpose. There is no evidence here of any threats or intimidations which were directed toward any specific "decision or determination" being made by the police officer. I would reverse the intimidation conviction on the ground that, although Deshler is guilty of battering an officer, he is not guilty of intimidating the officer "with intent to induce him,

contrary to his duty to do or make or to omit or delay any [as yet unspecified] act, decision or determination."

This majority opinion concerns me because now an "intimidation" charge can be added to every prisoner battery or resisting arrest charge. Increasing criminal liability for this kind of action should be done by the legislature, not the court.